SCHMIDT ET AL., APPELLANTS, *v.* AVCO CORPORATION ET AL., APPELLEES.

[Cite as Schmidt *v.* Avco Corp. (1984), 15 Ohio St. 3d 310.]

(No. 84-473—Decided December 31, 1984.)

*Drew, Ward & Graf Co., L.P.A., Mr. Richard H. Ward* and *Mr. William R. Graf,* for appellants.

*Messrs. Taft, Stettinius & Hollister, Mr. Robert G. Stachler, Mr. Thomas R. Schuck, Messrs. Dinsmore & Shohl, Mr. Mark A. Vander Laan* and *Mr. Stephen S. Eberly,* for appellees.

*Per Curiam.* The sole issue presented in this case is whether the trial court properly refused to certify this case as a class action. This court holds that the denial of class certification herein did not rise to the level of abuse of discretion and accordingly upholds the rulings of the lower courts.

The law to be applied to this case is not in dispute. It is well-established that a trial judge has broad discretion in determining whether a class action may be maintained. Absent a showing of abuse of discretion, a

trial court's determination as to class certification will not be disturbed. See, *e.g., Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98. It is within this context that this court addresses the specifics of this class action determination.

In order to maintain a class action, the requirements of Civ. R. 23(A) and 23(B) must be met. Four prerequisites must be satisfied under Civ. R. 23(A) and the failure to satisfy any one of the four will result in the denial of certification:

"(A)   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition, it must also be shown the action comes within the purview of at least one of three types of class actions described in Civ. R. 23(B). The focus in this case has been on Civ. R. 23(B)(3) which provides as follows:

"[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * *"

Applying these standards to the instant case, while remaining mindful that the failure to meet any one of these prerequisites will defeat a request for class certification, this court cannot find that the trial court abused its discretion in denying certification. Specifically, this court finds that there is ample support in the record to support the lower courts' determinations that questions of law or fact common to the members of the class do not predominate over any questions affecting only individual members or that a class action is not superior to other available methods for resolving the controversy fairly and efficiently as is required by Civ. R. 23(B)(3).

In reaching this determination, this court has been guided by generally accepted interpretations of the requirements of Civ. R. 23(B)(3) as well as by the specific guidelines outlined in the rule. Thus, while what is meant by "predominate" is not made clear by the rule, it is generally held that in determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication. And, in determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein. Wright & Miller, Federal Practice and Procedure (1972) 59, Section 1779.

To aid courts in determining whether there has been compliance with the Civ. R. 23(B)(3) requirements of predominance and superiority, *i.e.*, requirements that demonstrate the utility and propriety of employing the class action device, the drafters listed four factors which they deemed to be particularly relevant:

"(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

These factors simply emphasize the policy objectives of the rule. Their consideration requires the court to focus on the efficiency and economy elements of the class action while emphasizing that special caution must be employed in Civ. R. 23(B)(3) class actions because of the loose affiliation among these class members which magnifies the risks inherent in any representative action. Wright & Miller, *supra*, at 46, Section 1777.

An examination of the complaint and record in the instant case supports the lower courts' determination that a class action would be inefficient and non-economical herein because the claims raised involve non-common issues that are either inextricably entangled with common issues or are too unwieldy to be handled adequately on a class action basis.

Appellants state in their first claim that on the date of sale Avco had in effect a written separation pay policy entitling employees to compensation if they were terminated due to a reduction in work force and that Avco refused to pay such compensation to those hired by C.E. The claim further alleges that the separation pay policy was "an inducement for each class member to remain in Avco's employ and constituted a binding contract between Avco and each class member." The appellate court determined as follows. If this claim is viewed as raising the doctrine of promissory estoppel, as Avco so argues, then the circumstances of each individual employee would need to be analyzed and the elements of inducement and reliance would have to be proven with respect to each individual member of the proposed class. If this claim is decided under contract principles, individual issues would still predominate, for it raises the possibility of an issue of proof as to each individual class member's awareness of the offer to pay separation benefits as provided for in the policy. Finally, if the policy[2] is construed as making the search for other employment a condition precedent to payment of benefits, then it would be necessary to determine which of the individual employees hired by C.E. also looked for other employment.

---

[2] The policy states:

"The purpose and intent of this policy is to specify benefits including compensation for a reasonable amount of time *while seeking other employment* in the event an employee is laid off due to a reduction in force." (Emphasis added.)

Likewise, the lower court found that the third claim, which asserts that payment under the pension plan of only two percent interest on withdrawn employee contributions was "unconscionable," raises individual issues as well. It requires differentiating between employees who withdrew their contributions from those who did not.

Finally, the court determined that the fifth claim, which alleges that C.E. has not provided retirement and other fringe benefits "substantially equivalent" or comparable to those provided by Avco at the time of sale, could potentially raise individual issues as to which employees saw the notice posted on the bulletin board which allegedly assured comparable benefits, and which employees relied upon it in accepting employment with C.E. The court also stated that "[i]f the benefits at C.E. were found not to be 'substantially equivalent' to those at Avco, the computation of damages would involve an analysis as to the type of benefits (such as medical and life insurance, severance pay, and retirement pay) each individual was entitled to and received at Avco compared to the type of benefits entitled to and received at C.E.," thus presenting some complex individual issues.

The lower court also founded its denial of class certification on the difficulties that would be encountered in managing this class action. The court noted that the creation of several subclasses would be necessitated. Count One would require the creation of a subclass consisting of those terminated employees hired by C.E., inasmuch as it is alleged that the separation pay policy was "* * * an inducement for each class member to *remain* in Avco's employ * * *." (Emphasis added.) The second, third and fourth claims, all of which concern Avco's pension plan, would also necessitate the creation of a subclass since participation in the plan was voluntary and there was not one hundred percent participation. The third claim would additionally require the creation of a subclass within a subclass, separating those who participated in the plan and withdrew their contributions at two percent interest from those who made no withdrawals. Finally, a subclass consisting of those employees hired by C.E. would be required with regard to the fifth claim because it alleges that C.E. did not provide benefits comparable to Avco as promised.

This court is well aware that Civ. R. 23(C)(4)(b) specifically authorizes the court to divide the class into appropriate subclasses. Nonetheless, the requirements for a class action must still be met. Under Civ. R. 23(B)(3), a class action must be superior to all other available methods for adjudication of the controversy and one of the tests of superiority is the manageability of the action.

Based on the above, this court cannot find that the lower courts abused their discretion in denying class certification due to the presence of complex individual issues and the necessity for the creation of multiple subclasses. The record supports the determination that, under these facts, the disadvantages of complexity and possibility of prejudice outweigh the

advantages of common treatment. Here, where individual rather than common issues predominate, the economics of time, effort, and expense and the efficiency of class action treatment are lost, and the need for judicial supervision and the risk of confusion are magnified. Under such circumstances, a class action is clearly inappropriate.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.