OPINION
This matter involves ten consolidated appeals from a judgment of the Franklin County Court of Common Pleas certifying two consolidated cases brought by plaintiffs-appellees, James Hansen, Albert Glick, Frank Duval, Jeannine Duval, and Carter Randolph, as a class action pursuant to Civ.R. 23.
The genesis of this action is in a 1995 public offering of common stock and convertible promissory notes by K.G. Marx, Inc. ("Marx securities"). According to plaintiffs' complaints: K.G. Marx; its directors, Mark Frendt, Gail Frendt, Gary Riddle, and Barbara Georges (collectively "Directors"); its lawyers, Dinsmore Shohl, L.L.P., David G. LeGrand, Robert F. Gage (collectively "Dinsmore"), and Belinda S. Barnes; and its accountants, Landaker, Kramer Associates, Inc., James Landaker and Scott Harper (collectively "Landaker"), prepared an offering circular for distribution to potential purchasers of the Marx securities. The offering circular allegedly misrepresented or failed to disclose several material facts relating to the financial condition of K.G. Marx. In alleged reliance upon the offering circular, plaintiffs each purchased Marx securities during the latter half of 1995. As a result of the material facts which were misrepresented or not disclosed in the offering circular, K.G. Marx went bankrupt and the Marx securities purchased by plaintiffs have been rendered worthless.
On April 18, 1997, Quantum Capital Corp., James Hansen, Albert Glick, and Frank Duval commenced this matter with the filing of a complaint in the Franklin County Court of Common Pleas (hereinafter "case number one"). The complaint in case number one named Mark Frendt, Gail Frendt, Gary Riddle and Barbara Georges as defendants and asserted claims for violation of R.C. 1707.41, 1707.43, fraud and breach of fiduciary duty in the preparation and distribution of the offering circular. On June 23, 1997, plaintiffs filed their first amended complaint in case number one. The amended complaint added Jeannine Duval and Carter Randolph as plaintiffs, changed the first claim to allege violations of R.C. 1707.41, 1707.43 and 1707.44, and changed the second claim to allege a violation of R.C. 1707.59.
On June 24, 1997, Quantum Capital, James Hansen, Albert Glick and Frank Duval filed a second action against K.G. Marx's receiver (hereinafter "case number two"). The original complaint in case number two asserted claims for violation of R.C. 1707.41, 1707.43 and 1707.44, breach of contract, estoppel and fraud.
On August 11, 1997, the trial court ordered plaintiffs' two cases consolidated.
On January 22, 1998, Quantum Capital voluntarily dismissed all of its claims against all defendants in both cases.
On January 23, 1998, plaintiffs filed a motion requesting leave to amend their complaints to include several shareholder derivative claims and to pursue the consolidated action as a class action pursuant to Civ.R. 23. On March 9, 1998, the trial court granted plaintiffs' motion to amend their complaints.
On April 1, 1998, plaintiffs filed their second amended complaint in case number one and their first amended complaint in case number two. In case number one, the amendments sought to maintain the consolidated action as a class action, and added a shareholder derivative action and a claim for negligent misrepresentation/non-disclosure against the Directors. The amendments in case number two also sought to maintain the action as a class action; added Jeannine Duval and Carter Randolph as plaintiffs; added a shareholder derivative claim for malpractice/indemnity/contribution against Dinsmore, and Barnes; added claims for estoppel, fraud and negligent misrepresentation/non-disclosure against K.G. Marx; and added claims for malpractice and estoppel against Landaker.
On March 16, 1998, the trial court granted defendants an extension of time to respond to plaintiffs' requests to maintain its shareholder derivative claims and to pursue its claims as a class action until defendants had completed the depositions of plaintiffs' proposed class representatives.
On May 4, 1998, the Directors and the receiver for K.G. Marx filed separate third-party complaints seeking contribution and indemnification from Quantum Capital and Quantum Capital principals, Thomas Dooley, Nancy Vargo, Thomas Daly and Michael Patterson.
By a decision and entry filed on September 3, 1999, the trial court granted plaintiffs' request to maintain their claims as a class action, but denied their request to pursue its shareholder derivative claims. Quantum Capital, Thomas Dooley, Nancy Vargo, and Thomas Daly (collectively "Quantum") appeal from the trial court's decision and entry of September 3, 1999, assigning the following errors:
 I. The Trial Court Erred When It Concluded That Appellees had Complied With Ohio Revised Code §§ 1707.432-1707.438.
 II. The Trial Court Erred When It Concluded That Appellees Had Satisfied All Seven Prerequisites Governing A Class Action Under Ohio Rule of Civil Procedure 23.
Quantum's first assignment of error asserts that the trial court erred in certifying plaintiffs' claims as a class action, as plaintiffs failed to comply with the publication requirements set forth in R.C.1707.433(A)(1), the pleading requirements set forth in R.C. 1707.436(A) and (B), and because the trial court ignored the immunity for "forward-looking statements" provided by R.C. 1707.437.
R.C. 1707.433, 1707.436 and 1707.437 were all enacted as part of 1996 Am.Sub.H.B. No. 350. In State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, paragraphs two and three of the syllabus, the Ohio Supreme Court held that Am.Sub.H.B. No. 350 was "unconstitutional in toto." Accordingly, R.C. 1707.433, 1707.436 and 1707.437 are of no force or effect, and plaintiffs need not have complied with these provisions.
Quantum's first assignment of error is overruled.
Quantum's second assignment of error asserts that the trial court erred in certifying plaintiffs' claims as a class action pursuant to Civ.R. 23. A trial court's decision to certify or not to certify an action as a class action may only be reversed on a showing that the trial court abused its discretion. Baughman v. State Farm Mut. Auto. Ins. Co.
(2000), 88 Ohio St.3d 480, 483. However, a trial court does not have unlimited discretion in deciding whether or not to certify a class action, but must exercise its discretion within the boundaries established by Civ.R. 23. Hamilton v. Ohio Sav. Bank (1998),82 Ohio St.3d 67, 70. A determination by a trial court regarding class certification that is clearly outside the boundaries established by Civ.R. 23, or that suggests that the trial court did not conduct a rigorous analysis into whether or not the prerequisites of Civ.R. 23 are satisfied, will constitute an abuse of discretion.Id.
Under Civ.R. 23, seven requirements must be met before an action may be maintained as a class action: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied. Civ.R. 23(A) and (B); Warner v. WasteManagement, Inc. (1988), 36 Ohio St.3d 91, 94-98.
In determining whether the seven class certification requirements have been met, a trial court is not to consider the merits of the claims.Ojalvo v. Bd. of Trustees of Ohio State Univ. (1984), 12 Ohio St.3d 230,233. However, a trial court may consider any evidence before it at that stage of the proceedings which bears on the issue of class certification. Senter v. General Motors Corp. (C.A.6, 1976),532 F.2d 511, 523. Thus, the trial court could properly consider plaintiffs' depositions in making its certification determination under Civ.R. 23.
The first Civ.R. 23 requirement, that there be an identifiable and unambiguous class, will not be deemed satisfied unless the description of the class is sufficiently definite such that it is administratively feasible for the court to determine whether or not a particular individual is a member of the class. Hamilton, at 71-72 (quoting 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure [2 Ed. 1986] 120-121m, Section 1760). Stated another way, the class must be defined with enough precision to "permit identification within a reasonable effort." Warner, at 96.
In the instant case, it is clear from the record that the class certified by the trial court consists of approximately one hundred eighty-four investors who purchased securities in K.G. Marx through the 1995 public offering. Membership in this class is clearly limited and individual members are identifiable with very little effort. In order to determine whether an individual is a class member, the individual need be asked at most two questions: (1) Did you purchase K.G. Marx stock or promissory notes? (2) If so, did you purchase them through the 1995 public offering? The first requirement for class certification is met.
The second requirement for class certification is that the parties named to represent the class actually be members of the class. In order to satisfy this requirement, a plaintiff need only have proper standing to sue on behalf of the class. Hamilton, at 74. To have standing to sue on behalf of the class, a plaintiff must possess the same interests and have suffered the same injury as all members of the class. Id.
Here, the only dispute regarding the requirement that the class representatives be members of the class centers on plaintiff, Carter Randolph. All other plaintiffs and class members are individual investors who purchased Marx securities for themselves through the 1995 public offering, and who suffered financial loss when the value of the Marx securities declined. In contrast, Randolph's deposition testimony reveals that Randolph is an investment advisor who only purchased Marx securities on behalf of his clients. Therefore, unlike the members of the class, Randolph did not suffer a financial loss as a direct result of the Marx securities' decline in value. Accordingly, Randolph is not a proper class representative. This error, however, is not fatal to plaintiffs' class certification, as it may be remedied by deleting Randolph as a class representative on remand. See Warner, at 97. (Remanding the case for determination of class membership.)
The third requirement for class certification is numerosity. Civ.R. 23(A)(1) states that a class action may only be maintained if "the class is so numerous that joinder of all members is impracticable." Here, the purported class has approximately one hundred eighty-five people, well beyond the number that can practicably be joined in a single action.Warner, at 97. Thus, the numerosity requirement is satisfied.
We now turn to the fourth requirement for class certification, "commonality," which requires that "there are questions of law or fact common to the class." Civ.R. 23(A)(2). The Ohio Supreme Court has indicated that the commonality requirement is to be given a permissive application. Warner, at paragraph three of the syllabus. It is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. Marks v. C.P. Chemical Co. (1987),31 Ohio St.3d 200, 202. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied.Warner, at paragraph three of the syllabus.
The trial court found the commonality requirement was satisfied, as all class members had similar legal claims stemming from the nucleus of operative facts surrounding the offering circular. The trial court did not abuse its discretion in so concluding.
The next requirement for class certification is typicality. Civ.R. 23(A)(3) mandates that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he requirement of typicality serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." Baughman, at 484 (citing Moore's Federal Practice [3 Ed. 1977] 23-92 to 23-93, Section 23.24[1]). Typicality is satisfied where there is no express conflict between the representatives and the class.Warner, at paragraph four of the syllabus.
Quantum argues that the claims of the class representatives are not typical of the misrepresentation/ non-disclosure claims of class members. Plaintiffs' class claims generally allege that the class members relied upon the misleading or incomplete offering circular in deciding to purchase Marx securities. In contrast, plaintiffs' depositions reveal that plaintiffs did not rely upon the offering circular in deciding to purchase Marx securities. Essentially, Quantum argues that, because plaintiffs are subject to a defense, which is not typical of the class, their claims are not typical of the class. InBaughman, the Ohio Supreme Court rejected this same argument, stating as follows:
 "* * * [D]efenses asserted against a class representative should not make his or her claims atypical. Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class.
 "This view is supported by the principle that the class representative need not show a probability of individual success on the merits, and by the use of the disjunctive in Rule 23[A], which refers to `claims or defenses.'" * * *
Baughman, at 486 (quoting 1 Newberg on Class Actions [3 Ed. 1992] 3-90 to 3-93, Section 3.16).
Although plaintiffs' claims are typical of those of the class, Quantum would deny plaintiffs' class certification because plaintiffs may not be able to prove reliance. This argument goes to individual substantive disputes. If plaintiffs were required to prove reliance at this stage of the proceedings, it follows that no class action could stand until a plaintiff proved every material element of his individual claims.Baughman, at 486. Such a procedure was not envisioned by Civ.R. 23. Id.
Further, Quantum's position that plaintiffs did not rely upon the offering circular because they relied upon the advice of their brokers or investment advisers in deciding to purchase Marx securities is flawed. Although plaintiffs admit that they did not rely directly upon the offering circular, if the brokers or investment advisers upon whom plaintiffs relied obtained their information from the offering circular, plaintiffs can nonetheless prove "indirect reliance" upon the offering circular. South Carolina Natl. Bank v. Stone (D.S.C. 1991),139 F.R.D. 325, 331 (investor satisfies reliance element by proof that he relied on his broker who, in turn, relied upon the official statement); Abrams v.Southeastern Municipal Bonds, Inc. (D.Colo. 1990), No. 89 N 150, unreported (investor indirectly relied on official statement through her broker). In fact, it is likely that most class members will have relied indirectly, rather than directly, upon the offering circular in this case, as it is unlikely that many people would have purchased Marx securities without a recommendation of some kind from a financial adviser or stockbroker. Accordingly, indirect reliance upon the offering circular neither subjects plaintiffs to reliance defenses nor makes plaintiffs' claims atypical of those of the class. Abelson v. Strong
(D.Mass. 1987), No. 85-0592-S, unreported.
Plaintiffs have satisfied the typicality requirement.
The sixth requirement for class certification is that the class representatives "fairly and adequately represent the class." Civ.R. 23(A)(4). This requirement is of crucial importance in terms of ensuring that members of the class who will not have their individual days in court are afforded due process of law. Marks, at 203.
The adequate representation requirement is generally divided into two parts: (1) the adequacy of the representative parties themselves; and (2) the adequacy of the representative parties' counsel. Warner, at 98. A representative will be deemed adequate so long as his interests are not antagonistic to the interests of other class members. Marks, at 203. The representatives' counsel will be deemed adequate where the lawyers are "qualified, experienced and generally able to conduct the proposed litigation." Wright, Miller Kane, at 375, Section 1769.1. Quantum challenges both the adequacy of plaintiffs as representatives of the class, and the adequacy of plaintiffs' counsel to represent the class.
Quantum first argues that plaintiffs are too unfamiliar with the facts of this litigation to be deemed adequate class representatives. In support of this argument, Quantum points to plaintiffs' depositions. It is true that plaintiffs' depositions reveal plaintiffs to be unfamiliar with both the underlying facts and the nature of the litigation they are pursuing. However, this shortcoming does not make them inadequate class representatives. It is well-established that it is not necessary that proposed class representatives be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which their case rests in order for them to be deemed adequate to represent the class.Surowitz v. Hilton Hotels Corp. (1966), 383 U.S. 363, 371, 86 S.Ct. 845,850. This rule would appear to stem from the realization that class representatives who are laypersons inherently rely on their counsel to identify the relevant facts and understand and argue the salient law. This realization is all the more true where, as here, the case involves a complex area such as securities law.
Because plaintiffs' interests are not antagonistic to the interests of other class members, we cannot say that the trial court abused its discretion in concluding that plaintiffs are capable of fairly and adequately representing the class.
Quantum also argues that plaintiffs are inadequate representatives because they are subject to the "bespeaks caution" doctrine. The judicially created "bespeak caution" doctrine provides that, "when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward looking statements will not form the basis for a securities * * * claim if those statements did not affect the `total mix' of information the document provided investors.'"In re Donald J. Trump Casino Securities Litigation (1993), 7 F.3d 357,371.
Initially, because plaintiffs' complaints assert that defendants knew of the alleged misrepresentations or omissions contained in the offering circular, the "bespeaks caution" doctrine does not apply. In rePrudential Securities Inc. Ltd. Partnership Litigation (S.D.N.Y. 1996),930 F. Supp. 68, 72. More importantly, however, the "bespeaks caution" doctrine is a defense and, as such, is not an appropriate basis on which to deny class certification. Baughman, at 486.
Quantum asserts that plaintiffs' counsel is inadequate to represent the class because a conflict of interest exists as a result of plaintiffs' counsels' former representation of Quantum. Plaintiffs' counsel, the law firm of Swedlow, Butler, Levine, Lewis Dye Co., L.P.A. ("Swedlow"), also represented Quantum when Quantum was a plaintiff in this matter. However, after Quantum dismissed its claims, and before it reentered this litigation as a third-party defendant, Swedlow ceased its representation of Quantum and Quantum acquired different counsel.
No actual conflict of interest exists between plaintiffs' representation by Swedlow, and Swedlow's former representation of Quantum. Quantum has not shown how Swedlow's former representation of Quantum will harm the firm's ability to adequately represent the interests of the class. The federal district court's decision in Healyv. Loeb Rhoades Co. (N.D.Ill. 1983), 99 F.R.D. 540, supports this conclusion. In Healy, the defendant asserted that counsel for plaintiff could not adequately represent the class because counsel also represented another party, McNichols, who was potentially liable in indemnity or contribution for any judgment rendered against the defendant. In addressing this issue, the trial court recognized the conflict and conditioned class certification on counsel's ceasing his representation of McNichols. Id. at 542. In the present, the remedy used by the Healy
court is already in place, as plaintiffs' counsel has already ceased its representation of Quantum.
Both plaintiffs and their counsel are equipped to fairly and adequately represent the interests of the class.
The seventh and final requirement for class certifications requires a finding that one of the three requirements of Civ.R. 23(B) is satisfied. In granting class certification, the trial court determined that plaintiffs had satisfied Civ.R. 23(B)(3), which provides:
 An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
* * *
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. [Emphasis added.]
It has already been determined that the claims of the class members share common questions of law and fact arising from the offering circular. However, for purposes of concluding that common questions of law or fact predominate over individual issues, it is not enough for such common questions to merely exist, rather the common questions must represent a significant aspect of the case and they must be capable of resolution for all class members in a single adjudication. Schmidt v.Avco Corp. (1984), 15 Ohio St.3d 310, 313. "`[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" Cope v. Metropolitan Life Ins. Co. (1998), 82 Ohio St.3d 426,429-430 (quoting Lockwood Motors, Inc. v. Gen. Motors Corp.
(D.Minn. 1995), 162 F.R.D. 569, 580).
Quantum argues that the trial court abused its discretion in finding that common issues of law or fact predominate over individual issues because plaintiffs' claims will require each class member to individually prove that he or she actually relied upon the offering circular in making the decision to purchase Marx securities. Plaintiffs counter that the Ohio Supreme Court's decision in Hamilton and Cope support the trial court's finding that the class members' reliance on the offering circular can be inferred across the class and that common issues, therefore, predominate.
Hamilton involved an attempt to certify a class consisting of mortgagors on whose mortgages the defendant, Ohio Savings Bank, had calculated interest using a method which charged the mortgagors' interest at rates that were in excess of the rates set forth in the standard mortgage contracts entered into by the parties. Hamilton, at 68. The trial court denied class certification without opinion. Id. at 69. On appeal, the court of appeals determined that the trial court had properly denied certification to the class under Civ.R. 23(B)(3). Id.
In Cope, the plaintiffs sought certification of a class consisting of holders of life insurance policies issued by defendant, MetLife, who were sold replacement insurance as new insurance and did not receive the statutorily mandated disclosure warnings. Cope, at 437. The crux of the plaintiffs' complaint was that MetLife "engaged in a scheme to collect larger commissions and front-end load charges by intentionally omitting the state-mandated written disclosure warnings when issuing replacement life insurance." Id. at 433. The trial court concluded that Civ.R. 23(B)(3)'s predominance requirement was not satisfied because "`an individual determination as to what the plaintiffs were told by their respective agents will be crucial in determining liability.'" Id. at 428. The court of appeals agreed with the trial court, holding that individualized proof would be necessary to determine each claim. Id.
In determining that the predominance requirement of Civ.R. 23(B)(3) was satisfied in Hamilton and Cope, the Ohio Supreme Court held that, because the misrepresentations at issue were contained in standard form documents, the misrepresentations were essentially identical with respect to each individual class member. Cope, at 437; Hamilton, at 84. In such cases, the court concluded, it was unnecessary to require each individual class member to prove reliance on the standardized forms. Cope, at 435-437; Hamilton, at 83-84. Instead, reliance on the standardized forms could be inferred across the entire class. Hamilton, at 84; Cope, at 435-436.
Here, the offering circular, which contained the alleged misrepresentations and omissions, is a standard form document like those at issue in Hamilton and Cope. Accordingly, reliance upon the offering circular may be inferred for all who received the circular. To be sure, some individualized scrutiny will be required to ensure that the securities dealers or brokers who advised class members to purchase Marx securities actually received the offering circular. However, this is a relatively minor matter given that the balance of factual and legal issues raised by plaintiffs' complaints is common to all class members. Thus, the trial court could reasonably find that common issues predominated over individual issues.
Finally, given the size of the class and the predominance of common issues, class action treatment may well be the most efficient way to adjudicate the claims of the class members.
In conclusion, we wish to emphasize that the question before us is whether the trial court abused its discretion in determining that the present matter should be certified as a class action, not whether we would have certified the action as a class action had we been the trial court. Reasonable jurists could reasonably find that the seven class action requirements were met.
Quantum's second assignment of error is overruled.
Having overruled Quantum's first and second assignments of error, the judgment of the trial court is affirmed subject to Carter Randolph's removal as a class representative.
 ___________________ McCORMAC, J.
BRYANT and KENNEDY, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.